**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| JESSLEY DAWSON<br>144 East Helena Street, Apartment 120<br>Dayton, Ohio 45404, | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES**<br>**AND INJUNCTIVE RELIEF** |
| MORRISON MANAGEMENT<br>SPECIALISTS, INC.<br>1 Wyoming Street<br>Dayton, Ohio 45409, | )<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve Also:** | )<br>) | |
| CORPORATION SERVICE<br>COMPANY<br>1160 Dublin Road, Suite 400<br>Columbus, Ohio 43215, | )<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

Plaintiff, Jessley Dawson, by and through undersigned counsel, as her Complaint against Defendant Morrison Health Care, Inc. ("Morrison"), states and avers the following:

**PARTIES, JURISDICTION, AND VENUE**

1. Dawson is a resident of the City of Dayton, Montgomery County, Ohio.

2. At all times herein, Dawson was acting in the course and scope of her employment.

3. Morrison is a domestic corporation that does business at 1 Wyoming Street, Dayton, Montgomery County, Ohio 45409.

4. Morrison is and, at all times herein, was an employer within the meaning of R.C. § 4112.01 *et seq.*

5. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Dawson is alleging a Federal Law Claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), 28 U.S.C. § 2000e and the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq.*

6. All material events alleged in this Complaint occurred in Montgomery County, Ohio.

7. This Court has supplemental jurisdiction over Dawson's state law claims pursuant to 28 U.S.C. § 1367 as Dawson's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

9. Dawson timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2024-00962 against Morrison ("Dawson EEOC Charge").

10. On or about August 6, 2024, the EEOC issued a Notice of Right to Sue letter to Dawson regarding the Charges of Discrimination brought by Dawson against Morrison in the Dawson EEOC Charge.

11. Dawson received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1).

12. Dawson has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

13. Dawson has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

**FACTS**

14. Dawson is a former employee of Morrison.

15. Dawson began working for Morrison on or about April 4, 2023.

16. Dawson worked for Morrison as a Patient Dining Associate.

17. Dawson is a transgender woman.

18. Dawson uses the pronouns she/her to self-identify.

19. Morrison was aware that Dawson uses she/her pronouns.

20. Dawson's coworkers at Morrison were aware that Dawson uses she/her pronouns.

21. Dawson suffers from post-traumatic stress disorder ("PTSD"), generalized anxiety disorder, and depression (Dawson's "Disabilities").

22. Due to her Disabilities, Dawson has experienced panic attacks, heart palpitations, nausea, difficulty sleeping, feelings of sadness, feelings of nervousness, difficulty concentrating, and other symptoms in response to triggering stimuli.

23. As a result of suffering from her Disabilities, Dawson is and was considered disabled within the meaning of 42 U.S.C. 126 § 12101 *et seq.*

24. As a result of suffering from her Disabilities, Dawson is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

25. Dawson has a record of her Disabilities.

26. In the alternative, Morrison perceived Dawson as being disabled.

27. In the alternative, Morrison perceived that Dawson's Disabilities constituted a mental impairment.

28. In the alternative, Morrison perceived that Dawson's Disabilities substantially impaired one or more of her major life activities, including working, socializing, sleeping, thinking, focusing, and concentrating.

29. Despite these actual or perceived disabling conditions, Dawson could perform the essential functions of her job.

30. During Dawson's employment at Morrison, Dawson was the subject of disparate treatment because of her gender.

31. During Dawson's employment at Morrison, Dawson was the subject of disparate treatment because of her transgender identity.

32. During Dawson's employment at Morrison, Dawson was the subject of disparate treatment because of her Disabilities.

33. Starting on or about April 4, 2023, Dawson's coworkers at Morrison misgendered Dawson ("Misgendering").

34. Erica Hartley worked at the Miami Valley Hospital as a Nutrition Supervisor in the same department as Dawson.

35. Hartley is a cisgender woman.

36. Hartley knew Dawson before her social transition to live openly as a woman.

37. Hartley misgendered Dawson despite knowing her preferred pronouns.

38. Hartley asserted that because Dawson formerly presented as a man, she should tolerate being misgendered.

39. The Misgendering included Dawson's coworkers calling Dawson "sir."

40. The Misgendering included Dawson's coworkers calling Dawson "mister."

41. Dawson continually corrected Dawson's coworkers misgendering her ("Corrections").

42. Despite Dawson's Corrections, Dawson's coworkers continued the Misgendering.

43. The Misgendering was continual.

44. The Misgendering was severe.

45. The Misgendering was hostile.

46. The Misgendering was pervasive.

47. The Misgendering was intentional.

48. The Misgendering was purposeful.

49. The Misgendering was willful.

50. The Misgendering aggravated symptoms of Dawson's Disabilities.

51. The Misgendering was targeted toward Dawson because of Dawson's Disabilities.

52. The Misgendering was targeted toward Dawson because of Dawson's gender.

53. The Misgendering was targeted toward Dawson because of Dawson's transgender identity.

54. Dawson's coworkers did not misgender similarly situated coworkers.

55. Dawson's coworkers did not misgender similarly situated non-disabled and/or cisgender coworkers.

56. The Misgendering was disability discrimination.

57. The Misgendering was gender discrimination.

58. The Misgendering was transgender discrimination.

59. On or about April 14, 2023, Dawson reported the disability, gender, and transgender discrimination to Director of Nutrition Erin Seiter ("First Report of Discrimination").

60. Seiter is a cisgender woman.

61. Seiter is not diagnosed with PTSD, generalized anxiety disorder, or depression.

62. Seiter was Dawson's supervisor.

63. Dawson's First Report of Discrimination described the Misgendering Dawson was subject to.

64. In response to Dawson's First Report of Discrimination, Seiter failed to take prompt remedial action.

65. In response to Dawson's First Report of Discrimination, Morrison failed to take prompt remedial action.

66. In response to Dawson's First Report of Discrimination, Seiter summoned a police officer to escort Dawson to the mental health facility in the hospital.

67. Seiter told the police that Dawson expressed a desire to self-harm and commit suicide ("False Allegation of Self-Harm").

68. The False Allegation of Self-Harm was false.

69. The False Allegation of Self-Harm was falsified.

70. The False Allegation of Self-Harm had no basis in fact.

71. Dawson denied having the desire to self-harm and commit suicide.

72. Dawson did not desire to self-harm and commit suicide

73. Seiter intended for the police to apprehend Dawson without a warrant for transport to mental health services based on her False Allegation of Self-Harm.

74. Seiter made the False Allegation of Self-Harm because of Dawson's Disabilities.

75. Seiter made the False Allegation of Self-Harm because of Dawson's gender.

76. Seiter made the False Allegation of Self-Harm because of Dawson's transgender identity.

77. Seiter did not accuse other similarly situated non-disabled and/or cisgender employees of having suicidal ideations when they made reports of discrimination.

78. The False Allegation of Self-Harm was disability discrimination.

79. The False Allegation of Self-Harm was gender discrimination.

80. The False Allegation of Self-Harm was transgender discrimination.

81. The False Allegation of Self-Harm was made in retaliation to Dawson's First Report of Discrimination.

82. On or about April 14, 2023, Dawson was improperly admitted to the hospital because of the False Allegation of Self-Harm ("Improper Hospital Admittance").

83. The Improper Hospital Admittance was because of Dawson's Disabilities.

84. The Improper Hospital Admittance was because of Dawson's gender.

85. The Improper Hospital Admittance was because of Dawson's transgender identity.

86. Other similarly situated non-disabled and/or cisgender employees were not improperly admitted to the hospital because they made reports of discrimination.

87. The Improper Hospital Admittance was disability discrimination.

88. The Improper Hospital Admittance was gender discrimination.

89. The Improper Hospital Admittance was transgender discrimination.

90. The Improper Hospital Admittance was retaliation.

91. The Improper Hospital Admittance was retaliation for Dawson's First Report of Discrimination.

92. On or about April 16, 2023, Dawson was discharged from her Improper Hospital Admittance.

93. On or about April 16, 2023, Seiter told Dawson that if "[Dawson] was unhappy at [Morrison] then [Dawson] need to resign" ("Resignation Comment").

94. The Resignation Comment was because of Dawson's Disabilities.

95. The Resignation Comment was because of Dawson's gender.

96. The Resignation Comment was because of Dawson's transgender identity.

97. Other similarly situated non-disabled and/or cisgender employees were not told to resign after they complained about discrimination.

98. The Resignation Comment was disability discrimination.

99. The Resignation Comment was gender discrimination.

100. The Resignation Comment was transgender discrimination.

101. The Resignation Comment was retaliation.

102. The Resignation Comment was retaliation for Dawson's First Report of Discrimination.

103. On or about April 16, 2023, Dawson offered Seiter information about transgender identity and rights to help her understand why the Misgendering was so offensive.

104. On or about April 16, 2023, Seiter told Dawson that Dawson needed to give "it a rest" ("Give It a Rest Comment").

105. The Give It a Rest Comment was severe.

106. The Give It a Rest Comment was hostile.

107. The Give It a Rest Comment was pervasive.

108. The Give It a Rest Comment was offensive.

109. The "it" in the Give it a Rest Comment referred to transgender rights.

110. The "it" in the Give it a Rest Comment referred to Dawson's gender.

111. The "it" in the Give it a Rest Comment referred to Dawson's transgender identity.

112. The "it" in the Give it a Rest Comment referred to Dawson's Disabilities.

113. Other similarly situated non-disabled and/or cisgender employees were not told to "give it a rest" when they made complaints of discrimination.

114. The Give it a Rest Comment was disability discrimination.

115. The Give It a Rest Comment was gender discrimination.

116. The Give It a Rest Comment was transgender discrimination.

117. On or about May 7, 2023, Dawson was delivering food to a patient as part of her usual tasks.

118. A nurse, whose name is unknown, stopped Dawson in the hallway.

119. When the nurse stopped Dawson, the nurse referred to Dawson as "Sir."

120. Dawson explained to the nurse that her preferred pronouns are she and her.

121. Dawson explained that she was on her way to deliver food to a patient.

122. The nurse insisted on misgendering Dawson.

123. The nurse insisted that Dawson had to leave.

124. Dawson reiterated that she was merely doing her assigned work.

125. The nurse called a supervisor whose name is unknown on her cell phone.

126. The nurse told the supervisor that "he", meaning Dawson, was causing a problem.

127. Dawson continued to insist that her pronouns are she and her.

128. The Misgendering was continual.

129. The Misgendering was severe.

130. The Misgendering was hostile.

131. The Misgendering was pervasive.

132. The Misgendering was intentional.

133. The Misgendering was purposeful.

134. The Misgendering was willful.

135. The Misgendering aggravated symptoms of Dawson's Disabilities.

136. The Misgendering was targeted toward Dawson because of Dawson's Disabilities.

137. The Misgendering was targeted toward Dawson because of Dawson's gender.

138. The Misgendering was targeted toward Dawson because of Dawson's transgender identity.

139. Dawson's coworkers did not persistently harass or misgender similarly situated coworkers.

140. Dawson's coworkers did not persistently harass or misgender similarly situated non-disabled and/or cisgender coworkers.

141. The Misgendering was disability discrimination.

142. The Misgendering was gender discrimination.

143. The Misgendering was transgender discrimination.

144. On or about May 7, 2023, Dawson reported the disability, gender, and transgender discrimination to Seiter ("Second Report of Discrimination").

145. In response to Dawson's Second Report of Discrimination, Seiter failed to take prompt remedial action.

146. In response to Dawson's Second Report of Discrimination, Morrison failed to take prompt remedial action.

147. In response to Dawson's Second Report of Discrimination, Seiter called the police to involuntarily commit Dawson to the mental health facility at the hospital again ("Second Involuntary Hospitalization").

148. The Second Involuntary Hospitalization was because of Dawson's Disabilities.

149. The Second Involuntary Hospitalization was because of Dawson's gender.

150. The Second Involuntary Hospitalization was because of Dawson's transgender identity.

151. Other similarly situated non-disabled and/or cisgender employees were not threatened with involuntary hospitalization after they complained about discrimination.

152. The Second Involuntary Hospitalization was disability discrimination.

153. The Second Involuntary Hospitalization was gender discrimination.

154. The Second Involuntary Hospitalization was transgender discrimination.

155. The Second Involuntary Hospitalization was retaliation.

156. The Second Involuntary Hospitalization was retaliation for Dawson's First Report of Discrimination.

157. The Second Involuntary Hospitalization was retaliation for Dawson's Second Report of Discrimination.

158. Dawson explained to the mental health facility that she was wrongfully involuntarily sent to the mental health facility again.

159. The mental health facility refused to admit Dawson because she was emotionally stable.

160. Seiter then suspended Dawson without pay.

161. Seiter explained to Dawson that Morrison would contact her about returning to work.

162. Morrison failed to contact Dawson about returning to work for a few weeks.

163. On or about May 30, 2023, Dawson emailed Human Resources Manager Dustin Shepherd about returning to work.

164. Shepherd misinterpreted Dawson's email as a resignation.

165. Shepherd willfully misinterpreted Dawson's email.

166. Shepherd knowingly misinterpreted Dawson's email.

167. Shepherd responded to Dawson's email by terminating her employment.

168. On or about May 30, 2023, Morrison terminated Dawson's employment ("Termination").

169. The Termination was because of Dawson's Disabilities.

170. The Termination was because of Dawson's gender.

171. The Termination was because of Dawson's transgender identity.

172. Other similarly situated non-disabled and/or cisgender employees were not terminated after they complained about discrimination.

173. The Termination was disability discrimination.

174. The Termination was gender discrimination.

175. The Termination was transgender discrimination.

176. The Termination was retaliation.

177. The Termination was retaliation for Dawson's First Report of Discrimination.

178. The Termination was retaliation for Dawson's Second Report of Discrimination.

179. Morrison has a progressive disciplinary policy ("Discipline Policy").

180. A verbal warning is the lowest level of discipline in the Discipline Policy.

181. Dawson did not receive a verbal warning before the Termination.

182. A written warning is a higher level of discipline than a verbal warning in the Discipline Policy.

183. Dawson did not receive a written warning before the Termination.

184. A termination is the highest level of discipline in the Discipline Policy.

185. Morrison knowingly skipped progressive disciplinary steps in terminating Dawson.

186. Morrison knowingly terminated Dawson's employment.

187. Morrison knowingly took an adverse employment action against Dawson.

188. Morrison knowingly took an adverse action against Dawson.

189. Morrison intentionally skipped progressive disciplinary steps in terminating Dawson.

190. Morrison intentionally terminated Dawson's employment.

191. Morrison intentionally took an adverse employment action against Dawson.

192. Morrison intentionally took an adverse action against Dawson.

193. Morrison knew that skipping progressive disciplinary steps in terminating Dawson would cause Dawson harm, including economic harm.

194. Morrison knew that terminating Dawson would cause Dawson harm, including economic harm.

195. Morrison willfully skipped progressive disciplinary steps in terminating Dawson.

196. Morrison willfully terminated Dawson's employment.

197. Morrison willfully took an adverse employment action against Dawson.

198. Morrison willfully took an adverse action against Dawson.

199. As a direct and proximate result of Morrison's conduct, Dawson suffered and will continue to suffer damages.

## COUNT I: GENDER & GENDER IDENTITY DISCRIMINATION IN VIOLATION OF TITLE VII
**(as against Defendant Morrison Health Care, Inc.)**

200. Dawson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

201. Dawson is a member of a statutorily protected class based on her gender under Title VII.

202. Morrison's discrimination against Dawson based on her gender violates Title VII.

203. Dawson is a member of a statutorily protected class based on her identity as a transgender woman under Title VII.

204. Morrison's discrimination against Dawson based on her gender and transgender identity violates Title VII.

205. Morrison treated Dawson differently than other similarly situated employees based on her gender.

206. Morrison treated Dawson differently than other similarly situated employees based on her transgender identity.

207. Morrison treated Dawson differently than other similarly situated employees because she is a transgender woman.

208. During Dawson's employment, employees at Morrison discriminated against Dawson because of her gender.

209. During Dawson's employment, employees at Morrison discriminated against Dawson because she is a transgender woman.

210. Dawson informed her supervisors Seiter and Seiter about the discrimination she was facing.

211. Morrison did not take reasonable action to remedy the discrimination Dawson was facing.

212. Morrison terminated Dawson based on her gender.

213. Morrison terminated Dawson based on her gender identity as a transgender woman.

214. As a direct and proximate result of Morrison's conduct, Dawson suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA
**(as against Defendant Morrison Health Care, Inc.)**

215. Dawson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

216. Morrison treated Dawson differently than other similarly situated employees based on her disabling condition.

217. Morrison treated Dawson differently than other similarly situated employees based on her perceived disabling condition.

218. In or around June 2023, Morrison terminated Dawson's employment without just cause.

219. Morrison terminated Dawson's employment based on her Disabilities.

220. Morrison terminated Dawson's employment based on her perceived Disabilities.

221. Morrison violated the ADA when it discharged Dawson based on her Disabilities.

222. Morrison violated the ADA when it discharged Dawson based on her perceived Disabilities.

223. Morrison violated the ADA by discriminating against Dawson based on her disabling condition.

224. Morrison violated the ADA by discriminating against Dawson based on her perceived disabling condition.

225. As a direct and proximate result of Morrison's conduct, Dawson suffered and will continue to suffer damages.

### COUNT III: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*
### (as against Defendant Morrison Health Care, Inc.)

226. Dawson restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

227. Morrison treated Dawson differently than other similarly situated employees based on her disabling condition.

228. Morrison treated Dawson differently than other similarly situated employees based on her perceived disabling condition.

229. In or around June 2023, Morrison terminated Dawson's employment without just cause.

230. Morrison terminated Dawson's employment based on her Disabilities.

231. Morrison terminated Dawson's employment based on her perceived Disabilities.

232. Morrison violated R.C. § 4112.02 when it discharged Dawson based on her Disabilities.

233. Morrison violated R.C. § 4112.02 when it discharged Dawson based on her perceived Disabilities.

234. Morrison violated R.C. § 4112.02 by discriminating against Dawson based on her disabling condition.

235. Morrison violated R.C. § 4112.02 by discriminating against Dawson based on her perceived disabling condition.

236. As a direct and proximate result of Morrison's conduct, Dawson suffered and will continue to suffer damages.

### COUNT IV:  RETALIATION IN VIOLATION OF TITLE VII
### (as against Defendant Morrison Health Care, Inc.)

237. Dawson restates each and every prior paragraph of this complaint, as if it were fully restated herein.

15

238. As a result of Morrison's discriminatory conduct described above, Dawson complained about the gender, gender identity, and transgender discrimination that she was experiencing.

239. Subsequent to Dawson's reporting of gender, gender identity, and transgender discrimination to her supervisors Seiter and Hart, Dawson's employment was terminated.

240. Morrison's actions were retaliatory in nature based on Dawson's opposition to the unlawful discriminatory conduct.

241. Pursuant to Title VII it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

242. As a direct and proximate result of Morrison's conduct, Dawson suffered and will continue to suffer damages.

### COUNT V: RETALIATION IN VIOLATION OF THE ADA
**(as against Defendant Morrison Health Care, Inc.)**

243. Dawson restates each and every prior paragraph of this complaint, as if it were fully restated herein.

244. As a result of Morrison's discriminatory conduct described above, Dawson complained about the disability discrimination she was experiencing.

245. Subsequent to Dawson's reporting of disability discrimination to her supervisors Seiter and Hart, Dawson's employment was terminated.

246. Morrison's actions were retaliatory in nature based on Dawson's opposition to the unlawful discriminatory conduct.

247. Pursuant to the ADA, it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

248. As a direct and proximate result of Morrison's conduct, Dawson suffered and will continue to suffer damages.

### COUNT VI: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*
### (as against Defendant Morrison Health Care, Inc.)

249. Dawson restates each and every prior paragraph of this complaint, as if it were fully restated herein.

250. As a result of Morrison's discriminatory conduct described above, Dawson complained about the disability discrimination she was experiencing.

251. Subsequent to Dawson's reporting disability discrimination to her supervisors Seiter and Hart, Dawson's employment was terminated.

252. Morrison's actions were retaliatory in nature based on Dawson's opposition to the unlawful discriminatory conduct.

253. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

254. As a direct and proximate result of Morrison's conduct, Dawson suffered and will continue to suffer damages.

### DEMAND FOR RELIEF

WHEREFORE, Plaintiff Jessley Dawson respectfully requests that this Honorable Court grant the following relief:

(a) Issue a permanent injunction:

 (i) Requiring Morrison to abolish discrimination, harassment, and retaliation;

 (ii) Requiring allocation of significant funding and trained staff to implement all changes within two years;

    (iii)    Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal responsibility to investigate complaints promptly and/or take effective action to stop and deter prohibited personnel practices against employees;

    (iv)    Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    (v)    Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

(b) An award against Defendant of compensatory and monetary damages to compensate Dawson for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Dawson claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,


*/s/ Trisha Breedlove*
Trisha Breedlove (0095852)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 556-4350
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
           patrick.aguilar@spitzlawfirm.com

*Attorney for Plaintiff Jessley Dawson*

## JURY DEMAND

Plaintiff Jessley Dawson demands a trial by jury by the maximum number of jurors permitted.

                                                */s/ Trisha Breedlove*
                                                Trisha Breedlove (0095852)

                                                *Attorney for Plaintiff Jessley Dawson*